IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| G.R., by and through his parents, **JENNIFER AND GARRET R.**, *Plaintiffs*, | : : : : | CIVIL ACTION |
| v. | : : | NO. 17-2749 |
| COLONIAL SCHOOL DISTRICT, *Defendant.* | : : | |

## OPINION

### I. Introduction

This action is brought by Plaintiff G.R., through his parents Jennifer and Garret R., against Defendant Colonial School District ("the school") under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and other related state and federal statutes and regulations. Plaintiff requests that the Court reverse the hearing officer's decision that Plaintiff G.R. was not entitled to a "manifestation determination" prior to his expulsion from the school. The parties agreed to disposition of this case on the administrative record by means of motions for judgment. ECF No. 13. For the following reasons, Plaintiff's Motion for Judgment on the Administrative Record will be denied, and Defendant's Motion for Judgment on the Administrative Record will be granted.

1

## II. Background

Under the IDEA, before a school disciplines a student identified as a child with a disability or a child who the school "had knowledge" "was a child with a disability before the behavior that precipitated the disciplinary action occurred," the school must make a manifestation determination to decide "[i]f the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability" or the result of a failure to implement a child's Individualized Education Program ("IEP"). 34 C.F.R. § 300.530. Here the school made no manifestation determination prior to G.R.'s expulsion.

The hearing officer in this case concluded after an evidentiary hearing that the school did not have knowledge of G.R.'s alleged disability prior to the precipitating conduct—that is, bringing the weapon to school—and therefore was not required to make a manifestation determination to decide whether bringing the weapon to school was related to an alleged disability prior to expulsion.

"A public agency must be deemed to have knowledge that a child is a child with a disability if before the behavior that precipitated the disciplinary action occurred—

> 1) The parent of the child expressed concern in writing to supervisory or administrative personnel of the appropriate educational agency, or a teacher of the child, that the child is in need of special education and related services;
> 2) The parent of the child requested an evaluation of the child pursuant to §§ 300.300 through 300.311; or

2

3) The teacher of the child, or other personnel of the LEA, expressed specific concerns about a pattern of behavior demonstrated by the child directly to the director of special education of the agency or to other supervisory personnel of the agency.

20 U.S.C. § 1415(k)(5); 34 C.F.R. § 300.534(b)(1)-(3).

G.R. was an eleventh-grade student at Plymouth Whitemarsh High School in the Colonial School District ("the school") during the 2016–2017 school year. ECF No. 16 at pg. 3; ECF No. 19-1 at pg. 1. As part of his educational program, G.R. attended Central Montco Technical High School, where he participated in a program on automobile mechanics and bodywork. Administrative Record ("A.R."), Admin. Tr. 91:17-19.[1]

The following were stipulated facts at the due process hearing: on the night of March 22, 2017, G.R. left a Smith & Wesson Extreme Ops knife in the back pocket of his trousers after work, A.R., H.O.D. at pg. 3; this brand and style of knife is commonly used by auto mechanics, *id.* at pg. 4; the next morning, G.R. put

---

[1] Citations to "Admin. Tr." refer to the transcript at the May 12, 2017 administrative hearing in this matter. Citations to "Expulsion Tr." refer to the transcript at the April 24, 2017 expulsion hearing in this matter. Citations to "P" refer to the exhibits submitted by G.R.'s parents at the hearing, and citations to "S" refer to exhibits submitted by the school at the hearing. Citations to "H.O.D." refer to the Hearing Officer's written Decision. All of these documents are included in the Administrative Record filed with the Court. *See* ECF No. 8.

Citations to "J" refer to the Joint Stipulated Administrative Record from Expulsion Hearing to Supplement the Existing Record filed jointly by the parties on July 20, 2018. ECF No. 15.

3

on the same pair of trousers with the Smith & Wesson Extreme Ops knife still in the back pocket, *id.* That morning, a school district security officer noted suspicious activity in the student parking lot and investigated accordingly. ECF No. 1 at ¶ 9. The activity in question turned out to be G.R. and another student exchanging a parking pass. *Id.* During the security officer's investigation, G.R. turned his Smith & Wesson Extreme Ops knife over to the school's custody. *Id.*

As a result of his admitted weapon's possession, G.R. was accused of violating the school's weapons policy by bringing the Smith & Wesson Extreme Ops knife to school. A.R., H.O.D. at pg. 4. The school suspended G.R. for three days pending an informal hearing, and thereafter extended G.R.'s suspension to ten days pending an expulsion hearing. ECF No. 1 at ¶¶ 11 & 31.

After scheduling the expulsion hearing, the school offered G.R.'s parents an expulsion waiver agreement[2] and placement at two possible alternative schools. A.R., H.O.D. at pg. 4. Neither alternative placement would permit G.R. to continue the vocational program during the year of expulsion. *Id.* G.R.'s parents did not accept the alternative placement and did not sign the expulsion waiver agreement. A.R., Admin. Tr. 227:10-12.

---

[2] A waiver agreement is an agreement between the parties to waive expulsion hearings and place a student in an alternative educational program for an agreed time and agreed terms, during which time he would be barred from school properties, programs, and activities, and after which the student would have no expulsion on his or her educational record. A.R., H.O.D. at pg. 5.

4

The expulsion hearing, therefore, went forward and the expulsion hearing officer issued a written report recommending the school expel G.R. and following the recommendation of the hearing officer, the school expelled G.R. for one year. ECF No. 1 at pp. 23-31. G.R. was permitted to seek reenrollment at the Plymouth Whitemarsh High School following the one-year period. *Id.*

An expedited due process hearing was then conducted before a hearing officer for Pennsylvania's Office of Dispute Resolution to determine, among other things, whether G.R. was entitled to a manifestation determination under the IDEA and Section 504 prior to expulsion. ECF No. 1 at ¶ 40. The hearing officer took evidence concerning whether the school was deemed to have knowledge that G.R. was a child with a disability thus giving him the status of "thought-to-be" disabled and therefore entitling him to a manifestation determination prior to his expulsion. *Id.* at ¶ 41.

The facts established at the hearing are materially undisputed. The conclusions reached are in question. G.R.'s parents and the school communicated by email regarding G.R.'s performance in school beginning in 2013, when G.R. was in eighth grade, and continuing into 2017. A.R., H.O.D. at pg. 5. Those emails were predominantly for the purpose of keeping the parents informed about G.R.'s academic assignments and occasionally about G.R.'s study habits and work completion, which appears to be a regular education intervention in which G.R.

5

received additional support from teachers. *Id.*; *see also*, A.R., S-1. When G.R. was in eighth grade, following a parent-teacher conference, one of G.R.'s teachers compiled weekly reports from all of G.R.'s teachers regarding his grades, failures to complete work on time, and failures to complete tests and quizzes on time. A.R., H.O.D. at pg. 3. Those weekly reports were sent to G.R.'s mother, the rest of the teachers, the middle school guidance counselor, and both assistant principals. *Id.* One of G.R.'s eighth-grade teachers described the behavior exhibited by G.R. and addressed in the emails as "very typical middle school behavior." A.R., Admin. Tr. 181:15-23 ("What I saw in [G.R.] was what I see and continue to see in a lot of kids his age. He has not realized the big picture of things yet. He doesn't understand that there is a reward at the end of it all.").

G.R.'s grades show that while he struggled academically in ninth grade, he improved in tenth grade, and was eventually excelling in the vocational-technical program in light of his affinity for auto repair, which was his primary motivation for remaining academically engaged in school. A.R., H.O.D. at pg. 5; *see also*, P-C. All of G.R.'s standardized testing since 2013 evaluated him as either "Advanced" or "Proficient." *Id.* Specifically, G.R. achieved "Proficient" status on his tenth-grade literature assessment, "Advanced" on his tenth-grade biology assessment, and "Advanced" on his eleventh-grade algebra assessment. *Id.*

The hearing officer ultimately found that the school was permitted to expel G.R. without a manifestation determination because "[u]nder the IDEA's disciplinary rules, the [school] is not 'deemed to have knowledge that a child is a child with a disability' prior to the March 23, 2017 incident. Consequently, the Student was not thought-to-be eligible for IDEA disciplinary purposes." *Id.* at pg. 12. First, the hearing officer determined that G.R.'s parents did not express "concern in writing to supervisory or administrative personnel of the appropriate educational agency, or a teacher of the child, that the child is in need of special education and related services." A.R., H.O.D. at pg. 8. The hearing officer noted that the regulation "requires some statement indicating a belief on the Parents' part that special education is necessary," and yet evidence of any such statement was lacking. *Id.* Indeed, G.R.'s parents were aware of the school's special education services, as two of G.R.'s siblings were at some point receiving those services. A.R., Admin. Tr. 55:21–56:3. Nevertheless, G.R.'s parents made no such request for G.R. to receive special education services.

Second, the hearing officer noted that both parties agreed that G.R.'s parents did not request an evaluation of G.R. prior to the March 23, 2017 incident and thus, the second circumstance in which the school could have been deemed to have knowledge that G.R. had a disability does not apply here either. A.R., H.O.D. at pg. 9.

Third, the hearing officer determined that the required school personnel did not express "specific concerns about a pattern of behavior demonstrated by [G.R.] directly to the director of special education of the agency or to other supervisory personnel of the agency." *Id.* The hearing officer determined that based on the evidence presented, he could not conclude that the email discussions that occurred while G.R. was in eighth grade amounted to the discussion of a behavioral pattern as required by the IDEA in order to deem the school with knowledge of G.R.'s purported disability. *Id.*

The hearing officer then went on to add that despite his unequivocal finding that "the Parents did not satisfy their burden in regard to the 'specific concerns about a pattern of behavior in [eighth] grade," he felt compelled to add that even if he had found otherwise, such a finding would not have entitled G.R. to IDEA protections three years later in regard to the March 23, 2017 incident. *Id.* The hearing officer reasoned that the "specific concerns" and the behavioral incident at issue were not sufficiently connected so as to have triggered the need for a manifestation determination prior to G.R.'s expulsion. *Id.*

In his appeal of the hearing officer's decision, Plaintiff contends that the hearing officer created a time limit on a child's "thought-to-be" eligible status contrary to the plain text of the IDEA along with the statute's purpose and structure. Plaintiff claims that "G.R.'s teachers repeatedly expressed specific

8

concerns that G.R. was exhibiting a pattern of work avoidance and non-completion to special education and supervisory personnel of the [school]" and thus, the school "knew" G.R. had a disability that would have afforded him a manifestation determination before the school could expel him. ECF No. 16 at pp. 21-24.

### III. Legal Standard

"When a federal district court reviews state administrative proceedings, it '(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" *Colonial Sch. Dist. v. G.K. by & through A.K.*, -- Fed. App'x. --, No. 18-2190, 2019 WL 588781, at *2 (3d Cir. Feb. 13, 2019) (quoting 20 U.S.C. § 1415(i)(2)(C). "'Due weight' and deference shall be given to the state administrative proceedings." *Id.* (citing *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982))).

The Third Circuit has interpreted "'due weight' as a 'modified de novo' review." *Id.* (citing *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 269–70 (3d Cir. 2003)). Accordingly, "[f]actual findings from the administrative proceedings are to be considered prima facie correct, and if the reviewing court does not adhere to those findings, it is obliged to explain why."

9

*Id.* (internal quotation and citations omitted). "This 'due weight' obligation 'prevent[s] the court from imposing its own view of preferable educational methods on the states." *Id.* (citing *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1219 (3d Cir. 1993)). "'[T]he party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged.'" *Tyler W. v. Upper Perkiomen Sch. Dist.*, 963 F. Supp. 2d 427, 433 (E.D. Pa. 2013) (quoting *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012)).

## IV. Discussion

Having received and considered the entirety of the administrative record, ECF No. 8, and the Joint Stipulated Administrative Record filed by the parties to supplement the existing record, ECF No. 15, and reviewing the hearing officer's findings of fact as prima facie correct, as required, the Court finds by a preponderance of the evidence that a manifestation determination prior to expulsion was not required here. While G.R.'s parents argue that various events during the 2013–2014 school year (while G.R. was in eighth grade) amount to the expression of specific concerns about a pattern of behavior to the necessary personnel, the parents, as the party challenging the administrative hearing officer's determinations, failed to satisfy their burden of persuasion in order to establish that the school personnel were discussing a behavioral pattern or that those events somehow put the school on notice when G.R. was in eighth grade that it needed to

conduct a manifestation determination prior to expelling him in eleventh grade. The emails exchanged between the school personnel while G.R. was in eighth grade were not necessarily discussing a *behavioral* pattern, as required under the IDEA, but instead discussing issues that were "very typical middle school behavior."

As to Plaintiff's argument that the hearing officer mistakenly imputed a temporal connection requirement into the IDEA, upon review of the record, the hearing officer could not have been more clear that his determination that the third circumstance did not apply to this case was independent of his analysis as to whether, if he had found otherwise, the outcome of his analysis would have differed in light of the lapse in time between the purported discussions during the 2013–2014 school year and the precipitating conduct that occurred in 2017.

The Court finds that the hearing officer did not read into the IDEA a temporal connection cutoff; indeed, the IDEA includes no such rule. Instead, the hearing officer considered the temporal pattern of alleged behavior as context in determining whether G.R. was "thought-to-be" disabled by the school when he brought a knife to school on March 23, 2017. As the record indicates and the hearing officer found, the supposed discussions of a pattern of behavior pointed to by G.R.'s parents as the IDEA-triggering event, must be considered in light of the succeeding academic successes G.R. experienced, but for a handful of typical

reports one would find in communications regarding the average student, during G.R.'s high school years leading up to his ultimate expulsion. In reviewing those 2013–2014 discussions in light of the succeeding events as evidenced by the materially undisputed factual record, it is clear that the hearing officer did not err in determining that G.R.'s parents failed to meet their burden in showing that G.R. was "thought-to-be" disabled when he was expelled in 2017. In fact, to rule otherwise on this record would be a clear imposition of the Court's "own view of preferable educational methods on the states," which would be an impermissible usurpation of power as proscribed by the Third Circuit. *See Colonial Sch. Dist.*, -- Fed. App'x. --, No. 18-2190, 2019 WL 588781, at *2 (3d Cir. Feb. 13, 2019). Thus, the Court finds that Plaintiff, as the party challenging the hearing officer's determination, has wholly failed to meet his burden of persuasion. *See Tyler W.*, 963 F. Supp. 2d at 433 (quoting *Ridley Sch. Dist.*, 680 F.3d at 270). Accordingly, the Court will grant judgment in favor of Defendant on Counts I through IV.

Though Count V is different in some regard from Counts I through IV, the outcome here is the same. First, any allegation that rests upon the assertion that the IDEA was violated here falls for the reasons previously discussed. Second, any allegation challenging the expulsion proceeding or the ultimate outcome fails because Plaintiff failed to exhaust his administrative remedies in state court in accordance with Pennsylvania's Local Agency Law. Thus, the only remaining

12

allegation to support Count V is that the school district's superintendent should have exercised her discretion to recommend a punishment of less than expulsion in a canalized manner pursuant to enumerated criteria as required under School Board Policy 234. ECF No. 1 at ¶ 91.

Plaintiff argues that the School Board's policy required the superintendent to "adopt regulations setting forth the criteria to be used...in deciding whether to recommend discipline short of expulsion" for G.R. ECF No. 16 at 25. However, the superintendent testified at G.R.'s expulsion hearing that the Student Code of Conduct, which was drafted by a previous superintendent and the high school administration, provides the guidance referenced in the board policy Plaintiff raises. A.R., J 102-104. Those guidelines, the superintendent testified, purposefully defined the scope of her discretion broadly so that she could consider the extenuating circumstances of each incident on a case-by-case basis. *Id.* Here, the superintendent was aware that she had discretion to recommend a lesser expulsion period, A.R., J 86:9-19, 90:6-13, and she testified as to the thorough analysis she conducted in deciding whether to adhere to the one-year expulsion period at G.R.'s expulsion hearing, *id.* at 86:23–87:16, 106:11–107:9. Plaintiff's true issue lies with the superintendent's ultimate decision in this case, not with the methodology of her discretion. The record is clear that the superintendent neither abused her discretion nor decided to expel G.R. "on a whim," as Plaintiff suggests.

13

The Court will accordingly enter judgment in favor of Defendants as to Count V as well.

## V. Conclusion

For the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record will be denied, and Defendant's Motion for Judgment on the Administrative Record will be granted. An appropriate Order follows.

DATED: 3-12-2019

BY THE COURT:

_____
CHAD F. KENNEY, J.